UNITED STATES

v.

Curtis Allen YOUNG, Defendant.

No. Crim.A.2:01CR227.

United States District Court,
E.D. Virginia,
Norfolk, VA.

Feb. 7, 2002.

Timothy Murphy, AUSA, United States Attorney's Office, Norfolk, VA, for USA.

Larry W. Shelton, Office of the Federal Public Defender, Norfolk, VA, for defendant.

## ORDER

DOUMAR, District Judge.

Defendant, Curtis Allen Young ("Young"), filed a Motion to Suppress a statement he made to Special Agent Sean Scott ("Scott") of the United States Secret Service on August 13, 2001, after he was taken into custody but before he was read his *Miranda* rights. Specifically, during the execution of a valid search warrant—in the few seconds after Scott put handcuffs on Young, but prior to frisking him—Scott asked Young whether he had any "sharp objects, knives, needles, or guns." In response, Young volunteered that there was a gun on the bed upstairs. This is the sole statement that Young seeks to suppress.[1] After considering the evidence and arguments presented in a hearing on February 6, 2002, it is the decision of the Court that the Defendant's Motion to Suppress is **DENIED** because Scott's question, and Young's subsequent answer, are admissi-

---

1. A pistol was indeed found on the upstairs bed, along with a rifle underneath the bed. Those objects, however, are unquestionably admissible under the inevitable discovery doctrine, *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), as noted by defense counsel at the hearing, because there was a valid warrant to search the house in which the weapons were found.

Additionally, it was represented to the Court in the government's brief that when the second weapon was found upstairs, an officer came downstairs and reported to another officer that a second weapon had been found, prompting Young, who overheard this exchange, to apologize for having forgotten about the second weapon. Young denies making this statement, and therefore did not seek to have it suppressed. In any event, if the statement was in fact made, under the totality of the circumstance, it was clearly voluntary and not in response to any interrogation. *See, e.g., U.S. v. Elie*, 111 F.3d 1135, 1143–44 (4th Cir.1997).

ble under the public safety exception to the *Miranda* rule as articulated by the Supreme Court in *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984).

## I. *FINDINGS OF FACT*

Agent Scott and Defendant Young were the only witnesses to testify at the hearing on this matter. Their testimony conflicted on several fundamental factual issues so having heard and considered all the evidence, this Court accepts Scott's testimony and rejects Young's testimony regarding the events of August 13, 2001 concerning the making of the statement in question.

Specifically, this Court finds the following facts. On August 13, 2001, agents who had been investigating Young on suspicion of counterfeiting obtained a valid warrant to search Young's residence at 696 Orangewood Rd., Virginia Beach, Virginia, in the Eastern District of Virginia. Before securing the warrant, the agents checked Young's criminal record on the computer, which indicated that he had been arrested for kidnapping, assault, and harassment. Young, in his testimony, indicated that he had pled guilty to breaking and entering, a felony. Between eight and nine agents, including Scott, approached the residence around 8:10 p.m. The first agent knocked and announced that they were the police, at which time Young .opened the door. Five agents then entered the residence, with two agents who had their guns drawn preceding Scott, who had only a baton in his hand. Upon entering the premises, there were two males present in the dining area, and Young, who was secured in the living room area near the door.

Scott immediately secured Young, instructing him to lie face down on the floor. Scott then straddled Young's back and handcuffed him. Then, in preparation to frisk Young, without having read Young his *Miranda* rights, Scott asked him whether he had any "sharp objects, knives, needles, or guns." In response to Scott's question, Young volunteered that there was a gun on the bed upstairs. From the time Scott entered the residence to the time he asked the question was about twenty seconds. Scott testified that his intention in asking this question was to discover whether Young had any of these objects on his person, with the purpose of ensuring his own and Young's safety during the frisk. Scott further testified that this was a standard question which he always asked of a person prior to frisking him, in order to protect himself from any sharp objects and any blood born pathogens that might be on those objects, and to protect both himself and the person in custody in case a loaded gun was on the suspect's person. Additionally, this Court noted that in his testimony, Scott rattled off the phrase "sharp objects, knives, needles, or guns" several times, always in exactly the same way and without hesitation, so that this Court was convinced that it was a standard phrase in Scott's routine as a law enforcement officer and therefore accepts Scott's testimony regarding the words he used and his intent.

Meanwhile, as Scott was securing Young, the other four agents who entered through the front door proceeded to secure the other two occupants of the downstairs, Carlton Craddock and Robert Oliver. At the time Young made his statement to Scott about the gun on the bed upstairs, no agents had yet gone upstairs. It was subsequent to Young's statement that one of the agents who had entered through the front door let the remaining agents in through the back door. The agents who went in through the back door were the agents who went upstairs. Those agents were informed that Young had mentioned the presence of a gun on the bed upstairs, and they then proceeded to go up the back stair-

case and search the upstairs of the residence and discover both the gun that Young had mentioned to Scott and the rifle under the bed.

## II. *LEGAL ANALYSIS*

■ Under *Miranda* and its progeny, it is clearly a custodial interrogation when a government agent asks a question of a person when the agent is sitting on top of that person and they are handcuffed and lying face down on the floor—no reasonable person would feel free to leave that situation. Also, it is undisputed in this case that Scott had not read Young his *Miranda* rights when he asked whether Young had any "sharp objects, knives, needles, or guns." Absent an exception, the general rule is that any statements taken from such questioning must be suppressed. Therefore, the sole question of law in this case is whether the public safety exception to the *Miranda* rule applies to the facts of this case.

■ The Supreme Court carved out a public safety exception to the *Miranda* rule in *New York v. Quarles*, 467 U.S. 649, 655, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), where there is "an objectively reasonable need to protect the police or the public from any immediate danger associated with a weapon." *Id.* at 659 n. 8, 104 S.Ct. 2626. In that case, a woman told police that she had just been raped by a man with a gun, and that he had gone into a nearby grocery store. The police entered the store, and saw a man fitting the alleged rapist's description approaching the check-out counter. Upon seeing the police, the man fled into the aisles. When he was caught and frisked, the police discov-

ered an empty shoulder holster. Before advising the suspect of his *Miranda* rights, the police asked him where the gun was, and he indicated to them where he had put it. The Supreme Court held that the evidence of his statement about the gun should not be suppressed, despite the lack of *Miranda* warnings, because the officer's question was objectively reasonable to protect the public and the officers from the immediate danger of a gun left lying around the aisles of the grocery store. *Id.* at 655–56, 104 S.Ct. 2626.

The Fourth Circuit first addressed this public safety exception in *U.S. v. Mobley*, 40 F.3d 688 (4th Cir.1994). According to this Court's research, this and one other case, *U.S. v. Elie*, 111 F.3d 1135 (4th Cir. 1997), were the only published Fourth Circuit opinions appearing which addressed the public safety exception, and both cases involve facts that caused the Court to hold that the exception did not apply.[2] While the Court in *Mobley* held that the facts of that case fell outside the public safety exception, those facts are so distinguishable from those of the case at bar that they serve to illustrate why the facts of the case at bar fall within the public safety exception. In *Mobley*, the police, while executing both a valid search warrant of Mobley's residence, and an arrest warrant for Mobley himself, encountered the defendant naked and therefore clearly unarmed. The officers then conducted a security sweep of the residence, determined that Mobley was alone, and then allowed Mobley to dress, arrested, and Mirandized him. At that point he asked for a lawyer. As the agents led Mobley away from the resi-

---

**2.** For the sake of completeness, this Court notes that the only other Fourth Circuit opinions to address the public safety exception appearing in our research are two unpublished opinions which, while not to be used as precedent, uphold a district court's denial of a defendant's motion to suppress statements made in factual situations that are substantially similar to the case at bar. *See U.S. v. Sanderson*, 2001 WL 1555328, 23 Fed.Appx. 150 (4th Cir.2001) (per curiam); *U.S. v. Brown*, 153 F.3d 722, 1998 WL 480748 (4th Cir.1998) (per curiam).

dence, one asked him whether there were any guns in the house, to which Mobley responded affirmatively. Given these facts, the Court held that the situation lacked the "immediate need," as found in *Quarles*, required to invoke the public safety exception, and that Mobley's statement about the location of a gun in the apartment should be suppressed. *Id.* at 693, 104 S.Ct. 2626.

Similarly, in *Elie*, the defendant was arrested in the dining area of a hotel, handcuffed, frisked, and taken to the lobby of the hotel before he was asked, before being Mirandized, whether he had any weapons in his hotel room. The district court in that case suppressed Elie's statements in response to this query, and the government did not even bother to appeal the issue. *Id.* at 1137, 1139.

 In sharp contrast to the facts in *Mobley*, in the case at bar the defendant was clothed and therefore could have concealed on his person the "sharp objects, knives, needles, or guns" that Agent Scott was concerned about. Scott had an objectively reasonable concern for his own and Young's safety when he asked whether Young had any of these objects prior to a frisk in which Scott might have been cut or a loaded gun might have discharged. Unlike in *Mobley* and *Elie*, the whole incident in this case happened in about twenty seconds, and the danger was immediate because Young had not yet been frisked. In the case at bar, the police had not fully swept the residence at the time Young made his statements. Finally, Young had not requested a lawyer as had Mobley. In sum, the facts of this case are easily distinguishable from the cases where the Fourth Circuit has declined to apply the public safety exception.

That leaves *Quarles* itself as the guiding precedent for this Court to follow. As set out in that case, this Court concludes that in this case, under the circumstances, it was objectively reasonable for Scott to be concerned about an immediate danger to his safety when he asked if Young had any "sharp objects, knives, needles, or guns" prior to frisking him. The fact that Young's answer exceeded the scope of the question is, therefore, not legally significant, and the statement is admissible.

### III. *CONCLUSION*

In light of the above decisions and considering the facts of this case, Young's statement to Agent Scott that there was a gun on the bed upstairs is properly admissible against the defendant. Accordingly, the Court **DENIES** Defendant's Motion to Suppress.

The Clerk is **DIRECTED** to send a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**